IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CHESTER D. PRATT, )
)
        Plaintiff, )
)
v. ) NO. CIV-13-1210-R
)
BOARD OF COUNTY )
COMMISSIONERS OF THE COUNTY )
OF OKLAHOMA, *ET AL.*, )

## ORDER

This matter comes before the Court on the Motions for Summary Judgment, filed by Defendants Board of County Commissioners of the County of Oklahoma [Doc. No. 53] and Brian Jasper [Doc. No. 54]. Plaintiff responded in opposition to the motions. Defendant thereafter filed two separate motions to strike [Doc. Nos. 66 and 67], addressing evidence submitted by Plaintiff in response to the motion for summary judgment. Plaintiff responded to Defendants' Motions to Strike, and although the time for filing replies has not yet expired, the Court need not await Defendants' reply briefs in order to assess these motions. Having considered the parties' submissions, the Court finds as follows.

Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir.2000). The Court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866–68 (2014).

### Defendant Board of County Commissioners

Plaintiff is proceeding with his race discrimination claims under 42 U.S.C. § 1981/1983 and Title VII of the Civil Rights Act. Plaintiff's claims stem from an October 2012 disciplinary action, whereby he was suspended for two weeks without pay, and a March 2014 transfer that he admits he requested, but he contends he should have been permitted to transfer to a particular position, driver of the Boom Axe. He alleges that the denial of his request to return to the Boom Axe in retaliation for opposing the discrimination he suffered because of his race, African American. Specific facts will be set forth below as relevant to the outcome of Defendants' motions. Defendant Board contends it is entitled to summary judgment on Plaintiff's claims because he cannot establish either his discrimination or retaliation claims, and additionally because he lacks evidence that the County has a policy or custom of racial discrimination.

"In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII." *Baca v. Sklar*, 398 F.3d 1210, 1218 n. 3 (10th Cir.2005) (quotation and alterations omitted). "To make out a *prima facie* case of discrimination, [Plaintiff] must demonstrate (1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees." *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir.2005). If Plaintiff satisfies the *prima facie* requirement, the burden shifts to the Defendant to provide a legitimate, non-discriminatory reason for its action. *Id*. Then, Plaintiff must offer evidence to show that race was a determinative factor in the employment decision or that the Defendant's

non-discriminatory reason was merely pretext. *Id*. Furthermore, in the context of Plaintiff's § 1983 claim, in order for the County to be held liable Plaintiff must also demonstrate that County officials acted pursuant to a "custom or policy" of "discriminatory employment practices." *Randle v. City of Aurora*, 69 F.3d 441, 446 n. 6, 447 (10th Cir.1995) (*citing Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735–36, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)).

Plaintiff has presented sufficient evidence to establish the first and second elements of a *prima facie* case, that is, he is African American and he was suspended without pay for two weeks in October 2012, an adverse employment action. With regard to the third element, that similarly situated employees were treated differently, the Court finds that Plaintiff has failed to present evidence to establish genuine issues of material fact.

Plaintiff, along with two African American co-workers, was suspended in October 2012, after it was discovered that during vehicle maintenance on October 12, 2012, the men did not properly complete the work. An employee of the parts division, Mike Mayfield, determined that the oil filter on the vehicle had not been changed and that the vehicle had two extra quarts of oil. A new oil filter was checked out for service purposes, and it was found in the garbage can. Although no damage occurred to the vehicle, because the issues were discovered in short order, the three men were questioned about the incident. Plaintiff does not deny that situation, but contends their suspension was discriminatory, because approximately two weeks prior, white employees had been involved in a similar incident and were not disciplined.

Although at first glance it might appear that Plaintiff has established that similarly

situated white employees were treated differently, the undisputed evidence is that the white employees accused of not changing a filter on a vehicle had actually changed the filter and retrieved the old filter from the garbage to support their position.[1] As such, the Court cannot find that Plaintiff has established that similarly situated employees were treated differently.[2]

Furthermore, even if Plaintiff could establish that he was subjected to disparate treatment, Defendant has proffered a legitimate non-discriminatory reason for Plaintiff's ten day suspension, specifically his involvement in the oil filter incident described above. As such, the question is whether Plaintiff has presented sufficient evidence of pretext; the Court concludes he has not.

> Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons. In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear to the person making the decision, not the plaintiff's subjective evaluation of the situation. Thus, the relevant inquiry is not whether the employer's proffered reasons were

---

[1] Plaintiff contends that Brian Jasper informed one of his subordinate employees that he only wanted the unused filter back in the incident involving the white employees. There was, however, no unused filter, the allegations having been proven false by the employees themselves. Furthermore, the evidence establishes that Joe Blough performed the investigation in Plaintiff's case and decided on the punishment. If the incident involving the white employees had proven true and had Brian Jasper not reported it to Joe Blough, which he avers he was required to do in such situations, the Court could potentially consider the parties as similarly situated but treated differently. The actual facts, however, do not permit such a comparison.

[2] The remaining allegations regarding the alleged disparity between how whites and African American were treated with regard to drug testing and other work-related issues, such as allegedly being written up for not working, are not relevant to Plaintiff's *prima facie* case, where the Court is concerned with whether Plaintiff has shown that he was treated differently, not that other African American employees were treated differently than white employees. The Court further concludes that Plaintiff's complaint that the white employees were not made to go downtown during the investigation regarding the vehicle they allegedly serviced improperly is not sufficient to establish disparate treatment, for the same reason and further, going downtown for an investigation is not itself an adverse employment action.

4

wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs.

*Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1289 (10th Cir.2013) (internal quotation marks, brackets and citations omitted).

As noted above with regard to the situation involving white employees weeks before Plaintiff was suspended, there is no dispute that it was a case of false accusation. Second, to the extent Plaintiff contends that Brian Jasper, his supervisor and an alleged racist, had any role in his discipline, Plaintiff's deposition testimony was to the contrary, and is consistent with the evidence presented by Defendants.[3] When asked if he had any idea what role Brian Jasper would play in any decision about his punishment, Plaintiff responded that he did not know. Pratt Depo. p. 178. Other than Jasper's presence during questioning, there is simply no evidence to support the contention that he was otherwise involved. Specifically, Joe Blough, Jasper's supervisor, avers:

> I independently investigate employee misconduct and make recommendations to the Commissioner when I have completed my investigation.
> I personally conducted, or caused to be conducted, the investigation into the incident of 10-12-2012 involving the vehicle servicing which resulted in the suspension without pay of Chester Pratt, M  H  , and W  H  . I reviewed all materials gathered at my direction, including but not limited to

---

[3] Plaintiff alleges that Jasper, the Superintendent he used racial slurs and complained about having to work for Willa Johnson because of her race. Neither Plaintiff's deposition nor his affidavit establishes that he ever heard Mr. Jasper's alleged comments, and his responses to Defendant's discovery requests indicates that other employees told him about Jasper. The only putative witness that allegedly heard slurs by Mr. Jasper is Mr. Edwin Barnhill, a former employee. Plaintiff, however, failed to list Mr. Barnhill as a witness on his witness list, and the time for doing so has long passed. Additionally, discovery closed on December 1, 2014, and any attempt to extend the deadline for adding witnesses now would come too late in the process to avoid prejudice to Defendants. Although the discovery deadline post-dated the time for listing witnesses and exhibits, Plaintiff was obligated to conduct sufficient discovery prior to the deadlines to ensure compliance therewith. Mr. Barnhill's affidavit, is therefore not properly before the Court for consideration.

5

> photographs, witness statements, etc. I, in the presence of the HR Director Dan Matthews and Brian Jasper, led the questioning of the Plaintiff Chester Pratt, along with the other two employees involved, M H , and W H . I alone made the decision about what punishment to recommend to the Commissioner as to all three of these individuals. I did so without any recommendation from Brian Jasper. Once I decided what punishment I thought was appropriate under the circumstances that I was aware of, I informed the Commissioner of my recommendation, and she approved the discipline I recommended. Commissioner Johnson has the final say in this type of discipline.

Affidavit of Blough, ¶ h.

> Plaintiff's response to this evidence is in the form of a declaration from Lois Nubine:

> I have talked to many employees who agree that Commissioner Johnson ignores complaints about Brian Jasper. Complaining to her is like talking to a wall. For example, I remember when Chester Pratt was trying to discuss with her the fact that he received a suspension for several days for supposedly throwing away a fuel filter. Commissioner Johnson responded to him "I haven't heard anything about that." That conversation confirmed for me that she does not know what's going on here at Oklahoma County District 1 and Brian Jasper is making all of the decisions here without her or Joe Blough's input.

Declaration of Nubine, ¶ 5.[4] Plaintiff's reliance on the affidavit of Ms. Nubine is misplaced, in part because it is based on hearsay and in part because it is mere supposition on her part.[5] Her supposition is insufficient to challenge the affidavit of Mr. Blough, and the Court accepts

---

[4] According to Plaintiff, during the interrogation regarding the incident Willa Johnson entered the room and referred to the three men as "the three stooges." Thus it appears that she was at least aware of the incident. Robert Traylor's affidavit wherein he states that Willa Johnson stated she knew nothing about the working of Oklahoma County District 1 when she was first elected does not translate into a lack of knowledge many years later, the Court taking notice of the fact that Commissioner Johnson was first elected in 2007, and the incident in question occurred in 2012.

[5] The affidavit of former employee Robert Traylor opining that Willa Johnson is a mere figurehead and that she relies on Jasper's decisions is not sufficient to establish a genuine issues of material fact either as it appears to be mere opinion and supposition.

that he was the decisionmaker with regard to Plaintiff's suspension.[6] Furthermore, it does not appear that Plaintiff is seeking to make a "cat's paw," or subordinate bias theory of liability, as it was addressed in Defendant's motion but not Plaintiff's response thereto, *see Staub v. Proctor Hosp.*, ––– U.S. ––––, 131 S.Ct. 1186, 179 L.Ed.2d 144 (2011)(under such theory plaintiff must show that the decisionmaker relied on information from the biased supervisor), and the evidence presented does not establish any such reliance.

Plaintiff also lacks evidence that the reasoning behind the two week suspension is suspect. Mr. Blough explained, without contradiction, that he chose a two-week suspension in part because of Plaintiff's prior discipline and his prior complaints about having to service vehicles.[7] Plaintiff's allegation that the atmosphere at District 1 was racially divided and that African American employees were not permitted to stand around, while white employees were is not related in any manner to the decision to suspend Plaintiff. Furthermore, with regard to the alleged disparity in drug testing procedures, which are not implicated by the facts of Plaintiff's suspension, Defendant presents evidence that a single white employee avoided drug testing after an accident, admittedly in violation of policy, but all explanations

---

[6] Even assuming racial slurs by Mr. Jasper, Plaintiff must still show some nexus between the racial animus and Defendant's punishment decision. *See Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994)("'Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions.'" (*quoting Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir.1994)).

[7] Plaintiff was called for jury duty in April, 2012, and although released after a single day apparently sought two days of paid jury duty leave. When it was discovered that he had only served one day, he was forced to take a day of paid leave in lieu of the second day of jury duty leave. He contends in his brief, by citation to the disciplinary reports, that he voluntarily requested to use unpaid time off, but the disciplinary records do not reveal that it was his choice or that he brought it to the attention of his supervisors that he actually only served jury duty for one day.

are that it was on oversight by human resources, not Mr. Jasper. In all other incidents it appears the policy was applied equally and that both white and African American employees who failed drug tests were given opportunities to alter their behavior before being terminated.[8]

In short, the Court finds that Plaintiff has failed to present evidence that would permit a reasonable fact finder to infer pretext, entitling the County to summary judgment on all of Plaintiff's discrimination claims. As a result, the Court need not consider Plaintiff's contention that the County has a policy or custom of discrimination such that the County can be held liable for discrimination under § 1983. *See Trujillo v. Huerfano County Bd. of County Com'rs*, 349 Fed.Appx. 355, 362 (10th Cir. 2009)("Even if we were to decide whether Brunelli was a 'final policymaker' so as to give rise to § 1983 liability, the County is an employer for Title VII purposes, and therefore, we would still have to decide whether plaintiffs were subjected to employment discrimination in violation of Title VII.")(citing *Randle v. City of Aurora*, 69 F.3d 441, 450–51 (10th Cir.1995).

Defendant County also contends it is entitled to summary judgment on Plaintiff's Title VII retaliation claim. Plaintiff asserts that after he filed his claim of discrimination that he was subjected to retaliation because he was transferred from the mowing crew to the road crew. Plaintiff admits that he requested a transfer to avoid having to report to Kenneth Cooper, supervisor over mowing, but contends that he should have been permitted to return

---

[8] To the extent Plaintiff contends this changed only after he complained about his discriminatory treatment, he presents no evidence to support his contention, such as personnel records of the allegedly affected persons that predate his suspension.

to driving the Boom Axe, a job he held before the machine was temporarily incapacitated, even though historically that position has reported to Kenneth Cooper.[9]

The parameter of Plaintiff's retaliation claim is limited by the scope of his EEOC charge, and the sole allegation in the Charge dated May 22, 2104, is that the following occurred on March 27, 2014:

> I am being retaliated against for the filing of a previous EEOC Charge No. 564-2013-00158 against my employer. On or about March 27, 2013, Gary LNU, Superintendent, informed me I would be assigned from the Boom Ax to the Road Crew to operate a big Truck. Prior to the move I had been working on the Boom Ax in a satisfactory manner for 3 months until it had a break down. I asked to go back to the Boom Ax after it was repaired, however, my request was denied. I believe the assignment to the Road Crew was retaliation. I feel the assignment in the Road Crew was a demotion. I believe my Supervisor did not want me working the Boom Ax because it does not require much supervision. This has also happened [to] other employees because he wants to control people around him.

Defendant Ex. 8.[10]

Title VII forbids an employer from retaliating against an individual because the individual "has opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000(e)–3(a) (retaliation). Plaintiff may prove retaliation through either direct or circumstantial evidence. *See Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir.2008).

To make a prima facie case of retaliation under Title VII, Plaintiff must establish 1)

---

[9] He asserts that supervision had been transferred to Gary Johnson, which Gary Johnson denies.

[10] It appears 2013 may have been a typographical error, and that Plaintiff meant 2014. The issue is of no consequence to the outcome.

that he engaged in protected opposition to discrimination; 2) his employer subsequently took action that a reasonable employee would have found materially adverse; and 3) there is a causal connection between the protected activity and the adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006); *Argo v. Blue Cross and Blue Shield of Kansas*, 452 F.3d 1193, 1202 (10th Cir.2006). The standard for causation under a Title VII retaliation case is the "but-for" standard of traditional tort law. *University of Texas Southwest Medical Center v. Nassar,* 570 ––– U.S. –––, 133 S.Ct. 2517 (2013). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.*

There is no dispute that Plaintiff engaged in protected opposition to discrimination when he complained that his suspension was the result of unlawful race discrimination. Defendant contends, however, that the alleged retaliatory event, his transfer, would not be considered a materially adverse employment action. The Court assumes without deciding, for purposes of this motion only, that not being permitted to operate the boom ax would be considered a materially adverse action. The Court concludes, however, that Plaintiff cannot establish a causal connection between his protected activity and the transfer, in part because he requested the transfer out of mowing and out from under Mr. Cooper, and because he has no other evidence of causation. The transfer occurred more than 16 months after the County received the first notice of the Charge of Discrimination, which he alleged in his second charge was the protected activity, and therefore Plaintiff cannot rely on temporal proximity

to establish causation.[11] *See Pinkerton v. Colorado Dept. Of Transp.*, 563 F.3d 1052, 1065 (10th Cir. 2009). As such, Defendant County is entitled to summary judgment on Plaintiff's Title VII retaliation claim.

## Defendant Jasper[12]

Defendant Jasper seeks summary judgment with regard to Plaintiff's 42 U.S.C. § 1981/1983 claim on the basis that Plaintiff lacks evidence of his personal participation in any allegedly discrimination action. With regard to the suspension that forms the underpinning of this entire case, the only evidence of Jasper's involvement is that he informed Joe Blough of the issue with the vehicle and Joe Blough was responsible for the investigation of the incident and the attendant discipline. Because there is no admissible evidence in the record to support an inference that Jasper was individually responsible for the adverse employment action taken with regard to Plaintiff, or that he controlled the Board with regard to the decision to suspend Plaintiff, plaintiff's claims against Jasper in his individual capacity fail as a matter of law. Therefore, it is unnecessary to determine whether Jasper is entitled to qualified immunity. *See United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 940 (10th

---

[11] Plaintiff contends that Defendant's receipt of a Notice of Charge of Discrimination dated November 2, 2012 was not sufficient to put Defendant on notice of Plaintiff's charge so as to utilize 16 months as the period between the alleged protected activity and the alleged retaliation. Although the notice indicates therein that Defendant will receive a perfected charge once received, it also informed Defendant that Chester Pratt had filed a charge claiming to be aggrieved, which the Court construes as sufficient to put Defendant on notice. Furthermore, in his Second Amended Complaint Plaintiff alleges that he filed his Charge of Discrimination on January 1, 2013, which predates his transfer by more than one year, still too great of a period to allow a finding of causation based on temporal proximity.

[12] Plaintiff does not respond to Defendant Jasper's arguments regarding Title VII liability, presumably a concession that there is no individual liability under Title VII.

Cir.2008).

For the reasons stated herein, Defendants' motions for summary judgment are hereby GRANTED. Defendant's Motion to Strike is GRANTED, the Court has not considered the affidavits of those persons not identified by Plaintiff as witnesses, and indeed it is too late at this hour to amend the witness and exhibit lists filed by Plaintiff on October 15, 2014. Furthermore, the Court has been able to excise the inadmissible hearsay from consideration, especially with regard to the substantial anecdotal evidence about what an affiant was told by a non-witness about an employee of the County.

IT IS SO ORDERED this 15th day of December, 2014.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE